By the Court. Dues, J.
The grounds upon which we shall decide this case will render unnecessary the consideration of many of the questions that were elaborately discussed at the hearing; and as in the progress of a litigation that may still be expected, the same questions may again be raised, we shall abstain from any expression of our present views in relation to them.
The plaintiff claims to be the assignee of a debt of $40,000, which in its origin, was due from the defendants, The Long Island Rail Road Company to The Morris Canal and Banking Company, and the payment of which was seemed by the bond of the former company and by two successive mortgages, one a chattel mortgage, the other covering the railroad itself, its rights, privileges, and appurtenances.
The main objects of the bill are to set aside a prior assignment of the debt and its securities from the Morris Canal and Banking Company to the state of Michigan, and a subsequent assignment from the state to the defendant, Thompson, and to obtain, as against the Long Island Railroad Company, the ordinary decree of foreclosure and sale; and if we are bound to conclude from the statements in the bill, that the plaintiff is the legal or equitable owner of the debt, or is entitled in his own name to demand its payment, his right to maintain the present suit cannot be questioned.
The plaintiff derives his title from the receivers of the Morris Canal and Banking Company, who, in consequence of the insolvency of that company, were duly appointed by the chancellor of the state of Mew Jersey, upon the 29th of January, 1842, in conformity to the provisions of an act of the legislature -of that state, entitled an act “ to prevent frauds by incorporated companies.” The terms of the order of the chancellor, which exactly correspond with those of the law, give to the receivers (i fall power and authority to demand, sue for, collect, receive, and take into their possession, all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes, and property of every description,- belonging to the said Morris Canal and Banking Company, at the time of its insolvency, or suspension of business, *421 as set forth in the hill of the complainants, and to sell, convey, and assign all the said real and personal estate.” The proper construction of this order, and of the statute upon which it was founded, is evidently the first subject of inquiry.
We shall not examine the question, to the discussion of which the arguments of the counsel on both sides were mainly directed, namely, whether the act of the legislature of ¡New Jersey, and the order of the court of chancery, can be construed to have had an extra territorial operation, so as to have vested in the receivers a legal or equitable title to any of the property or effects of the corporation not within the jurisdiction of the state. We decline to consider this question, because we are now satisfied, (although upon the hearing our impressions were somewhat different,) that, in reality, it is not involved in the cause.
It may be perfectly true, that it is competent to a state legislature to direct a transfer to receivers of all the property and effects, wherever situated, of an insolvent corporation, created by its own laws, and that it would be our duty to give full faith and effect to the judgment or decree of a state tribunal, in conformity to the provisions of such a statute. But there is conclusive evidence that in this cause the act of the legislature of ¡New Jersey, and the consequent order in chancery, were not designed to operate, even within the jurisdiction of that state, as a transfer to the receivers of the whole or any portion of the property of the insolvent corporation. In a case which escaped the attention of the counsel, Willink v. The Morris Canal and Banking Company, 3 Green’s Ch. R. 400, the chancellor of ¡New Jersey expressly decided, that the only effect of the statute and of the order which he had founded upon its provisions, was to substitute the receivers in the place of the directors of the company, for the purpose of settling up and closing its affairs, and that the company was not dissolved, nor the title to its property changed, but only a power delegated to the receivers to take charge of and sell it. This construction- of the statute we think is 'fully justified by its terms, and, at any rate, it is that which we are bound to adopt.
In each state it is the province of its courts of justice to determine the' construction of its statutes, and as the construction *422 which they adopt becomes the law of the state, it must be regarded and followed as such by all foreign tribunals. Hence the averment in the present bill, that by force of the order or decree of the chancellor of Hew Jersey, all the property and assets, including the debt in controversy, belonging to the Morris Canal and Banking Company, when it first became insolvent, were vested in the receivers, must be rejected as an unsound and groundless conclusion of law.
The company was not divested of any portion of its property, and no title or interest of any kind passed to the receivers. It may be thought, however, that although the receivers had only a naked authority, not clothed with any title or interest, yet substantially the same question, that we have declined to consider, is still necessary to be decided. The extent of their authority, it may be said, is as necessary to be ascertained as the extent of their title, had a title been given to them. But in reality, if the acts of the receivers are to be judged by the same rules that wduld have been applied to those of the directors, no such question is requisite to be considered. If the assignment under which the plaintiff claims was made by the receivers in the name and under the seal of the company, it is just as valid as if it had been madp under the sanction of the directors in a similar form; while on the other hand, if the assignment was made by the receivers in their own names, and as the transfer of a title vested in themselves, its invalidity can hardly be doubted. (Bank of Metropolis v. Guttschliech, 14 Peters R. 19; Hatch v. Barr, 1 Ohio R. 390.) The averments in the bill upon this subject are materially defective. They leave it wholly uncertain whether the assignment upon which the plaintiff relies as the source of his title was made by the receivers in their own right and in their own names, or as the representatives and in the name of the company. It is stated to have been made under a special order of the chancellor, but to enable us to say affirmatively that under this order the plaintiff has acquired the title which he claims, the terms of the order, and of the assignment that followed, ought to have been fully set forth. These are defects, however, that may be supplied by amendment, and as we desire to reach the merits of the case, we shall consider *423 the hill in these respects as amended. We shall assume that the assignment was made in the form that perhaps alone could render it valid. We shall assume that it was an act of the company, sanctioned by the court and directed by the receivers.
The question, therefore, whether the plaintiff by virtue of his assignment became the legal or equitable owner of the debt in controversy, is seen to he exactly the same as whether an assignment, having this effect, could at that time have been ordered by the hoard of directora, had not their authority been superseded by that of the receivers. And it is certain that no such transfer could have been made, unless the debt at that time belonged to the Morris Canal and Banking Company, and a suit for its recovery, in the name of the company, could then have been maintained.
It is true that the decree appointing the receivers, authorizes them to sell and assign any of the debts belonging to the company, at the time of its insolvency and suspension of business, as set forth in the bill upon which the decree was founded. And it is possible that the time of the insolvency thus set forth, may have preceded any assignment of the debt and its securities to the state of Michigan. But had this fact been distinctly and positively averred, which it certainly is not, we should have regarded it as wholly immaterial, since as the state of Michigan was not a party to the suit in which the receivers were appointed, its rights could not he affected by a decree referring the insolvency of the company to any day prior to that upon which its title was acquired. It was beyond the power of the chancellor to avoid by an ex parte decree, any conveyance or assignment made by the company before the commencement of the suit; nor could we attribute this effect to his decree, without violating a rule of natural and universal justice, which the jurisprudence of every civilized nation adopts; namely, that those only are bound by a judicial sentence, to whom an opportunity of defending their rights has been given. It has been most justly held that an assignment in bankruptcy, which vests in the assignees all the property of the bankrupt from the time of the commission of the acts of bankruptcy set forth in the proceedings, has no retroactive force, so as to divest or impair *424 an intermediate title derived from the bankrupt. (Holmes v. Remsen, 4 John. Ch. R. 477.) And it would be still more unreasonable to attribute this force to a decree which, without attempting to change the property, confers only an authority to sue.
We therefore repeat, that unless it clearly appears from the statements in the bill, that the Morris Canal and Banking Company had a valid title to the debt in controversy at the time of its transfer by the receivers, and could then have maintained a suit for its recovery, the title of the plaintiff, which can only be valid as derived from the company, cannot be sustained. The bill, as we understand it, expressly avers that the debt was at this time due to the company, and the question that we are required to determine is, whether this essential averment is sustained or disproved by other facts alleged or admitted in the bill.
The facts necessary to be considered in determining this question, must now be stated. It appears from the bill, that the Morris Canal and Banking Company was largely indebted to the state of Michigan, and that for the purpose of securing the eventual payment of this debt, in whole or in part, the president and cashier of the bank, on the 9th of December, 1840, entered into an agreement, under the seal of the company, with the treasurer and agent of the state, by which they transferred and assigned to the state, the debt due from the Long Island Railroad Company, and the bond and chattel mortgage, which at that time were the only securities for its payment. It is true that the agreement refers to a judgment against the Long Island Railroad Company as the security assigned, but the bill admits that this is an error in description, and that the bond and chattel mortgage are the securities which were really meant, and were, in fact, assigned and delivered. It further appears that on the 6th of March, 1841, the Long Island Railroad Company, as an additional security for the satisfaction of its debt, executed and delivered to the Morris Canal and Banking Company, the second mortgage, covering the railroad, its privileges and appurtenances, and all other lands and real estate belonging to the railroad company, in the counties of Queens and Suffolk; and that on the 26th of April, in the same year, this mortgage was assigned as a further security to the *425 state of Michigan, and on the 28th, together with the assignment, was recorded in the clerk’s office of the county of Kings. It also plainly appears from statements in the bill, although the fact is not distinctly averred, that this mortgage passed into the possession of the state of Michigan, and is now held by its assignee, the defendant Thompson.
Considering the assignment of the debt and its securities to the state of Michigan as an entire transaction, the main object of the bill is, to set it aside as fraudulent and void; and as all the defendants are expressly charged with notice of the facts upon which the allegation of fraud is rested, the case must be determined upon the same principles that must have been applied, had the state of Michigan made no transfer of the title, if any, that it originally acquired.
The questions to be determined, therefore, "are, whether the state of Michigan, under the assignments that have been stated, acquired any title to the debt in controversy; and if this question must be answered in the affirmative, whether the nature of its title was such, that so long as it was outstanding it precluded a transfer of the same debt by the Morris Canal and Banking Company, or its receiver's, to the plaintiff or any other person. It is insisted, upon the part of the plaintiff, that, assuming the averments in the bill to be true, the pretended title of the state of Michigan was absolutely void, or, if voidable only, that its invalidity may be declared, and payment of the original debt, as now due to the plaintiff, be enforced by a decree in the present suit, upon the following grounds :
1st. That the president and cashier of the Morris Canal and Banking Company, in transferring the debt and its securities to the state of Michigan, acted without authority and in breach of their trust, and that their want of authority was known to the state of Michigan, or its agents; and 2d. That when the assignments were made, the company was insolvent, and its insolvency known to the state of Michigan; and, consequently, that the transaction was fraudulent and void, under the provisions of the act of the legislature of Kew Jersey, to which we have before referred. These objections will be considered in the order in which they have been stated.
*426 The averments in the bill in relation to the first assignment, that of the bond and chattel mortgage, are explicit and full— that it was made by the president and cashier in violation of their trust, without any authority, expressed or implied, and that these facts were at the time fully known to the agent of the state of Michigan. But the averments in respect to the second and most important assignment, that of the mortgage upon the railroad and its privileges, are materially different; and it is manifest, that if this assignment operated as a transfer of title, its necessary effect was, to ratify and confirm the prior transaction.
If it j>assed the mortgage, it must also have jessed the bond to which the mortgage refers, and the payment of which it was given to secure. This assignment, which was made by a separate instrument, under the seal of the company, signed by the president, and attested by the cashier, embodies in its attestation clause, the positive declaration, that it was made in pursuance of a resolution of the board of directors; and to the truth of this fact the president and cashier, or one of them, must have made oath, or the instrument could not have been recorded. It is true the bill avers that the assignment was made without any authority from the board of directors, and that the representation of such authority contained in the attestation clause was false and fraudulent. But it does not aver that the falsity of the representation was known to the state of Michigan or its agents, or that they were in any manner parties to the alleged fraud; and in the absence of any charge of notice, or participation, wre must intend that the state of Michigan received the assignment in good faith, and relied upon it as conferring a title that the company could never deny or impeach. Taking into consideration all the facts that have been stated, we exceedingly doubt whether the Morris Canal and Banking Company was not estopped from denying the validity of the assignment as a corporate act, and, consequently, whether the averment of the want of an authority derived from its directors ought not to be wholly disregarded. As the will of a corporation can be manifested only through its agents, there can be no safety in dealing with a corporation at all, unless it has agents who can furnish to others *427 conclusive evidence of its acts ; that is, agents hy whose declarations and conduct, when acting within the general scope of their authority, the corporation, in respect to innocent purchasers or assignees, must he hound. We should, therefore, have great difficulty in saying that the state of Michigan, in the present case, had not all the evidence that the transfer' of the deht in controversy was authorized by the board of directors, that the law can reasonably require. Let it he admitted that the parties interested in a transaction which depends for its validity upon the action of a board of directors, are bound to inquire whether the necessary resolution had been passed, the questions still remain to be answered, how and of whom is the inquiry to be made ? And what is the nature of the evidence which they are justified in demanding, and upon which they are warranted to rely? That they are bound, or are entitled to demand, a personal inspection of the books of the corporation, in which the proceedings of the directors are recorded, has never been held nor supposed; and if not, those proceedings can only he made known by the officers to whom the custody of the books is intrusted. These officers must, therefore, be considered as the agents by whom the corporate will is to be manifested: they have a general authority to impart the knowledge to those who are interested to obtain, and have the right to possess, it; and upon principle, the communication which they make to such persons, must he binding upon the corporation which trusts and employs them. That the responsibility of a principal is not confined to cases in which his agent acts under an express, or implied, authority, but exists in all cases where the agent is held out to the public as possessing the competent authority, is a doctrine which pervades the whole law of agency, and is constantly applied to the protection of innocent parties. (Story on Agency, § 443 and § 127, and cases there cited.)
The present case seems to be clearly embraced within the principle upon which this wise and equitable doctrine is founded.
It is not our intention, however, to place our decision upon this ground; we cannot find that the exact question has ever been determined, and it must be admitted that its proper deter- *428 urination is rendered somewhat doubtful by the language of judges as well as of text writers. We therefore prefer to decide the case upon reasons not merely satisfactory to our own minds, but fully borne out by prior decisions.
Whilst all the modern authorities agree that the seal of a corporation is not alone sufficient to authenticate the deed or instrument to which it is affixed, it is equally certain, that where the corporate seal is proved to have been affixed by the officers to whom its custody is intrusted, and the instrument is signed and attested in the usual form by the same officers, it will be presumed that they were fully authorized to perform the act, and the burthen of proving that they exceeded their power is cast upon the party who impeaches the title which the instrument purports to convey. (Clark v. The Imperial Gas Company, 4 Barn. and Adolph. 315; President, &c., of Berks and Daurphin Turnpike Road v. Myers, 6 Sergt. and Rawle 12; Baptist Church v. Mulford, 3 Halsted 183; Johnson v. Bush, 3 Barb. Ch. R. 239.)
It follows inevitably from this doctrine, that even where the corporate seal has been affixed to an instrument so attested, without authority, the title of a bona fide purchaser or assignee, so far from being absolutely void, is presumptively valid; and, until it has been set aside or declared void by a judicial sentence, constitutes him in judgment of law, the legal or equitable owner of the property or chose in action conveyed or assigned. Hence, if we remove from the present case, (as in reference to the question we 1 are now considering we certainly must,) every imputation of notice to the parties, it cannot be doubted that the state of Michigan, having in its possession the prima facie evidence necessary to sustain its claims, had a perfect right to demand and enforce the payment of the debt, nor that every payment made by the Long Island Eailroad Company would have operated, according to its extent, as an entire or partial discharge from its prior liability ; while, on the other hand, the Morris Canal and Banking Company, from its inability to produce the securities upon which its title rested, was in no condition to assert its rights, nor until the presumptive title which its agents had given, had been ascertained and declared to be *429 void, could it justly demand or legally enforce the payment of the debt. It cannot, therefore, be said with truth that the debt belonged to the Morris Canal and Banking Company at the time of its transfer by the receiver. The title of the company had been, for the time, divested by the act of its agents, nor could it be revested, until this act had been rescinded by the consent of the parties, or by a judicial sentence. In the interval, all that remained to the company was a right of action to set aside the assignment and reclaim the securities ; and, until by these means its original title was restored, it had not the power to make another assignment of the debt, so as to enable the assignee to maintain an action in his own name for its recovery. The debt, it must be remembered, was not a debt resting in parol, but the bond and mortgages which were the securities for its payment, werd also the proper evidences of its existence. From these, the debt could not be separated, but its assignment, if operative at all, must have operated to pass the securities to which it was attached. To assign the debt, was to assign the bond and mortgages. Such, the plaintiff avers in his bill, was the intention and effect of the assignment under which he claims, and it is upon the truth of this allegation that he founds his prayer for relief. The question, therefore, is most distinctly raised, whether an assignment of securities, which are in the possession of a third party, claiming in good faith to be the owner under a prima facia title, can be sustained ? And our examination of the subject compels us to say, that without departing from the law as it has long been settled, we cannot, as a court of equity, give effect to such an assignment, or lend oin’ aid in any manner to a person claiming under it. Such a person has not a locus standi injudAcio. The assignment of a debt, under such circumstances, is the transfer of a lawsuit, to be prosecuted by the assignee at his own expense, and the sale of a disputed title by a party out of possession. It is therefore illegal and void, as involving, and that in an aggravated form, the offences both of maintenance and champerty. (Powell v. Knowler, 2 Atk. 224; Strachan v. Brander, 1 Eden 308; Wallace v. Duke of Portland, 3 Ves. 493; Stevens v. Bagwell, 15 Ves. 139; Wood v. Donnes, 18 Ves. 128; Hartley v. Russell, 2 *430 Sim. & St. 25; Harrrington v. Long, 2 Mylne & Keen 590; Stanley v. Jones, 7 Bing. 369; 1 Hawkins P. C., b. 1, ch. 86, § 1; Story’s Eq. Jur. § 1048, ’49 and ’50.)
It is a mistake to suppose that the law of champerty is derived exclusively from the provisions of the statute, which we have re-enacted, that forbids the conveyance or sale of lands by a party .out of possession. The statutory prohibition is only a partial affirmance of a general rule of the common law. The common law forbids every transfer of a disputed title or right, whether relating to real or personal estate, by a person out of possession, and it is manifest that the reasons of public policy upon which the interdiction is founded, apply with equal force to every description of property. (Hawkins P. C. ut sup.; 2 Story’s Eq. Jur. § 1048; 4 Black. Comm. 135; Burke v. Green, 2 Ball & Beatty 517; Cholmondeley v. Clinton, 4 Bligh N. S. 4; Baker v. Whiting, 3 Sumner 475.)
It is true that the rule of the common law, in its original extent and strict interpretation, prohibited every assignment of a chose in action; but although in modern times the rule has been so far relaxed as to permit the assignment of a debt, where the securities are in the possession of a creditor, it has never been held nor intimated that such an assignment can be valid where it is not the amount or existence of the debt, but the title of the creditor which is disputed, and the securities are at the time in the possession of a third party claiming bond, fide under an adverse title. Uor could such a decision be made without an entire subversion of the principle upon which the law of champerty is founded, and an entire abandonment of the rules by which courts of equity, in judging of the validity of such transactions, have hitherto been governed. We shall err greatly if we imagine that the law upon the subject is enforced with less rigor in courts of equity than in courts of law; on the contrary, the doctrine in equity is extended to many cases which do not fall within the legal definition of maintenance or champerty, but which, as .leading to the same mischievous consequences, are equally repugnant to the policy of the law; and the aid of the court is uniformly and sternly denied whenever the transaction, in quaint but expressive language, even saroors of champerty. *431 (Powell v. Knowler; Strachan v. Brander; Wallace v. Duke of Portland; Wood v. Downes; ubi supra.)
The learned judge from whose decision this appeal has been taken, observed that “ a right of action to recover property fraudulently or tortiously taken, or in any way wrongfully withheld, or the value of such property, is perfectly assignable, and that in equity the title of the assignee is fully recognized.” But these observations, could we admit them to be just, have no application where the property sought to be recovered, is held in good faith under an adverse title. It is not necessary, however, to advert to this distinction, since the observations of the learned judge, admitting them to be applicable, are certainly inaccurate. They are inconsistent with the adjudged eases, and are decisively refuted by authorities to which the attention of the judge could not have been directed. We deem it sufficient to refer to the decision of Chancellor Kent in Arden v. Patterson., 5 John. Ch. R. 44; a decision pronounced upon full deliberation, and which, until we shall be better instructed by a higher tribunal, we must regard as authoritative and binding. The plaintiff Arden was wrongfully in possession of a certain number of pipes of wine, the value of which the assignees of the real owner, an insolvent, had attempted to recover in an action of trover, but from the defect of evidence had been forced upon the trial to submit to a non-suit. The defendant, Patterson, an attorney, then purchased the claim from the assignees for a trifling sum, believing that he would be able to establish its validity. He accordingly commenced a new suit against Arden, and succeeded in obtaining a judgment for more than five thousand dollars. The assignees, in whose names the suit had been brought, and the judgment recovered, repenting of their bargain, and perhaps thinking that they had been overreached, then made a compromise with Arden, and upon receiving from him somewhat less than half of the amount of the judgment, acknowledged its satisfaction. The supreme court, however, upon the application of Patterson, vacated the satisfaction, and authorized him to levy by execution the whole amount of the judgment. Arden and the assignees then' united in filing the bill, praying that the original sale and assignment to Patterson *432 might be declared illegal and void, and that upon receiving back the consideration money which he had paid, with interest, he might be perpetually enjoined from proceeding on the judgment; and the chancellor, upon the distinct ground, that the sale to Patterson was void for champerty, granted the relief which was asked. It is time that in his opinion he laid much stress upon the circumstance that Patterson was an attorney, but as he was not the attorney of the assignees, it is plain, that there was no such abuse of professional confidence, or exercise of undue influence, as could have furnished, of itself, a substantive ground of relief; the circumstance, therefore, could only have been adverted to as aggravating, and not as necessary to constitute, the offence which rendered the transaction void; and had it not appeared in the case, it is evident from the whole train of the reasoning of the chancellor, as well as from the authorities to which he refers, that the same decree would have been pronounced.
Unless a valid distinction can be stated between a sale of goods during an adverse possession, and an assignment of securities for a debt, it is manifest that the decision in Arden v. Patterson applies to the present case with a conclusive force; and as no such distinction has been pretended, or can be supposed to exist, we cannot refuse to yield to its authority.
It is true that Hr. Justice Story has expressed a doubt whether the doctrine in Arden v. Patterson, can be easily reconciled with other cases, and particularly with Harrington v. Long, 2 Mylne & K. 592, and Thalhimer v. Brinkerhoff, 20 John. R. 392; but we confess that, upon an attentive examination of the cases referred to, we have been unable to detect the inconsistency which this learned jurist supposes to exist. In all these cases, there were special circumstances which, in the opinion of the court, rendered it proper to except them from the operation of a general rule, the existence and terms of which were fully admitted. There were no similar circumstances in Arden v. Patterson, nor any such to be found in the present case. It may, perhaps, be allowed that the chancellor in Arden v. Patterson, in setting aside the assignment, after Patterson had obtained a judgment, and his rights, as owner of the judgment, had been *433 affirmed in a court of law, went somewhat beyond the English cases; but, in the principle of his decision, he is fully sustained by a series of adjudications, and especially by Strachan v. Brander, Wallace v. Duke of Portland, Stevens v. Bagwell, and Wood v. Downes.
The more recent case of Prosser v. Edmonds, 1 Young & Coll., Ex. R. 481, bears a closer resemblance to the present, than any that have been cited, and in fact, so perfect is the similarity, that there is hardly a sentence in the elaborate opinion of Lord Abinger, which, with a single alteration of the names of the parties, we might not with entire propriety engraft into our own. The positions which his lordship establishes, and upon which the court founded its decision, are, that the right of filing a bill in equity to set aside a prior conveyance or assignment, upon the ground of fraud, is from its nature incapable of being assigned, and that the rights of an assignee will never be admitted or enforced, unless it appears that the assignor at the time of the assignment had a substantial possession, or an immediate capability of personal enjoyment of the property conveyed; in other cases, he has only a naked right of action, the transfer of which, as an act of champerty and maintenance, the' policy of the law strictly prohibits. Applying these rules to the case before the court, his lordship added: “ It was impossible for the assignee in this case to derive any benefit from the security, except through the medium of this court; he has purchased, therefore, a hostile right of action to bring parties into a court of equity as defendants to a bill filed for the purpose of obtaining the fruits of his purchaseremarks which describe with exact and literal truth the condition of the plaintiff in the present suit. It was impossible for the plaintiff to foreclose the mortgage against the Long Island Railroad Company, or in any manner enforce the payment of the debt; or, indeed, place himself in a situation to acknowledge its satisfaction, until he had set aside the assignment to the state of Michigan, and from the state to the defendant Thompson; he purchased, therefore, no more than a right of action, which he knew at the time of the purchase could only be rendered available by a hostile suit. Prosser v. Edmonds is not like Arden v. Patterson, a controlling authority, *434 but the reasoning of the learned judge to which we have referred, commands our entire assent, and justifies in their whole extent the conclusions to which we had been led by our examination of the prior decisions.
It remains, then, only to inquire whether there are any special circumstances that can place the transaction, upon the validity of which we are required to pass, beyond the legitimate scope of the doctrine which we have shown to be established. It is said that the general rule which forbids the transfer of real or personal property, including choses in action, during the continuance of an adverse possession, is not applicable to a judicial sale; and if the term judicial sale is properly restricted in its application, the truth of the proposition need not be denied; but if the assignment under which the plaintiff claims, was made by the receivers in the exercise of their general powers, we cannot understand upon what ground it is supposed that it can he regarded as a judicial sale. It is true that the receivers were appointed by an order or decree of the court of chancery, hut their powers as receivers were defined by the statute under which the chancellor acted in making the appointment, nor is there the slightest reason to suppose that he meant by his decree to enlarge their statutory powers. Hnder the terms of the statute they had no authority, express or implied, to sell any portion of the real or personal estate of the company, which they had not reduced into possession; and it is this interpretation of the law that the chancellor must have adopted, when he decided that they were substituted in the place, and clothed with the powers of the directors. Hence, a sale made by them, can with no more propriety be denominated judicial, than a sale by the directors whom they superseded.
It has, however, been strongly rn-ged, that the receivers, in making the assignment, were not acting in the exercise of their general powers, but in pursuance of a special order of the court, as the bill expressly alleges. We shall not enter upon the question whether such an order could be regarded by us as a valid and independent source of title; it is sufficient to say, that as neither the terms of the order, nor of the petition upon which it is founded, are set forth in the bill, we are left wholly without *435 the means of judging of its intention and effect. The chancellor, when he granted the order, may have supposed that the securities for the debt were in the actual possession of the receivers; he may have been wholly ignorant of their prior assignment to the state of Michigan ; and in the absence of any averments in the bill to contradict the presumption, Ave are bound to presume that he was so. We are bound to presume that he would not have directed the assignment, had the facts been fully disclosed to him, since Ave cannot intend that, contrary to the policy of the law and the settled maxims of his court, he would have given his sanction to the purchase of a law suit and the sale of a disputed title; still less can we intend, that in the exercise of a special jurisdiction, he would have exceeded the authority which the legislature had conferred. Should it hereafter appear that the order which is relied on was founded upon a full disclosure of the material facts, it will then become necessary to consider, first, whether it was competent to the chancellor to enlarge the statutory powers of the receivers; and, secondly, whether the validity of an assignment of securities upon property in this state, and especially of a mortgage upon real estate, must not be determined by an exclusive reference to our own law, unaffected by the decision of any foreign tribunal. These are grave and difficult questions, upon which we forbear to express or intimate an opinion, since we are satisfied that the bill, as framed, reveals no circumstances to prevent the application of the general doctrine of the court in relation to champerty and maintenance; and, consequently, that it is our duty to declare that the assignment, under which the plaintiff claims, having been made to him when the securities were in the possession of a third party, claiming under a hostile title, is illegal and void.
The observations that have now been made, it is evident, dispose of the entire case, and render it unnecessary to consider whether the assignment to the state of Michigan was rendered void by the alleged insolvency of the company at the time.it was made, and by the knowledge of that insolvency which the bill ■imputes to the state and its agents. Let it be admitted that the title of the state was liable to be impeached upon this ground,, it *436 cannot be pretended that the assignment was absolutely void; nor that, until it was set aside, can it be denied that the possession of the state under it was clearly hostile. Nor is this all. If the assignment was the act of the company, (and it is only upon this supposition that any question as to the effect of the insolvency of the company can properly arise,) the transaction, as-between the parties, was perfectly valid; for, not only is the rule universal, that a fraudulent conveyance can never be impeached by a party or privy to the fraud, but by the express terms of the Hew Jersey act, to which we have so often referred, it is only as against its creditors, that the conveyance of an insolvent corpo-. ration is declared to be void. The decision of the chancellor in Willink v. The Morris Canal and Banking Company, as we understand it, denies to the receivers any authority to maintain a suit in their own names that could not be maintained in the name of the corporation; and if a bill, similar to the present in its allegations of fraud, could not have been filed by the receivers either in their own names or in the name of the company, there remains no pretence for saying that it can be sustained in the name of the plaintiff. We are not, however, to be understood as now deciding that the receivers might not have filed a bill in their own names, seeking, in behalf of the creditors, the same relief that the plaintiff requires; but if this right of action subsisted in the receivers, it was, in the language of Lord Abinger, a hostile and naked right, which, as not clothed with any possession, or immediate capacity of possession, they had not the power to assign.
The positions, that although the plaintiff may not be entitled to claim as an assignee, the bill may yet be sustained as the bill of a judgment creditor, or as filed by one creditor in behalf of all, scarcely required to be noticed. They are plainly untenable, and, as such, were virtually abandoned by the able counsel who last addressed us on the part of the plaintiff.' The only title set up in the bill, is an exclusive title in the plaintiff as assignee. It is upon this ground alone that he claims relief ; it is to this state of facts alone that the relief which he claims is adapted. ■Considering the bill as a judgment creditor’s bill, or as filed for *437 the common "benefit of all the creditors, the averments necessary to mark its distinctive character are wholly wanting.
The demurrer must, therefore, he allowed, and the bill be dismissed with costs; but the usual liberty to amend is given to the plaintiff, and we think it not unreasonable to allow him forty days for that purpose. In granting this liberty, however, we are not to be understood as saying that the bill can, in our judgment, be so amended as to enable the plaintiff to maintain the suit in Ms own name, and for his own exclusive benefit; but as he may and probably will, desire to appeal, it is just that he should have the opportunity of making the bill as perfect as he can before his appeal is taken.