### Joseph Whitehead et al.

*v.*

### Hamilton Rubber Company.

1. Where a corporation assigns accounts to one of its directors as security for his endorsement of its notes theretofore issued, he will not be permitted, in case of the insolvency of the corporation, to claim such accounts as a personal indemnity simply, but the holder of the notes so endorsed will be subrogated to the rights of such endorser to such accounts.

2. The presumption that an instrument to which the seal of a corporation is duly attached was first authorized by the corporation, is overcome by proof that the authority for the execution of such instrument was given at a special meeting of the directors, at which all were not present, there being no proof that the absent ones had any notice of such meeting; nor will the necessity of such notice be dispensed with by showing that the meeting was an adjourned meeting, the previous one having been a special meeting, without also showing that there was notice of such first special meeting, and that the object of it was made known in the notice, or that the directors, absent at the adjourned meeting, were present at the time of the adjournment, and that the question to be determined at such adjourned meeting was made known as the object of such adjournment.

---

On appeal from the determination of the receiver.

*Mr. William M. Lanning,* for the petitioner, the Danbury bank.

*Mr. Woodbury D. Holt,* for the First National Bank of Trenton and Mrs. Whitehead, executrix of Joseph Whitehead, deceased.

*Mr. Garret D. W. Vroom,* for the receiver and complainants.

*Mr. Edwin Robert Walker,* for Anna W. Bayard.

*Mr. James Buchanan,* for the Western National Bank et al.

BIRD, V. C.

The defendant is an insolvent corporation, and its assets are in the hands of a receiver. While it was in active business it gave several promissory notes, one of which was to the Danbury National Bank. All of these notes were endorsed by Joseph Whitehead, president of the corporation, and the holder of nearly all of its stock. After the giving of these notes, and before maturity, and within about ten days of the application for the appointment of a receiver, and undoubtedly with full knowledge of the insolvency of the institution, it executed to Mr. Whitehead an assignment of a very large number of its accounts, due from solvent debtors, in all amounting to over $20,000, which was nearly the entire value of its book accounts. After stating the various notes so endorsed by him, and the amount of each, the assignment recites that the object was to secure said Whitehead for not only the money due him on account of salary, and the money due him for cash loaned as aforesaid, but also to secure him against loss for and on account of said accommodation endorsements, by assigning unto him a portion of the book accounts and the said debts due thereon to said company. This was followed by an orderly assignment of said accounts, with full power to collect the same and to apply the moneys so collected in discharge of said obligations.

The Danbury bank, to which one of the said notes was made

payable, presented its claim to the receiver for the amount due thereon. Besides its claim at the hands of the receiver for the amount due, it also presented a statement in connection therewith of the fact of said assignment to Mr. Whitehead, and claimed the benefit of any rights which he enjoyed under said assignment. The receiver, as he had a right to do by virtue of the statute, inquired into the merits of said claim and rejected the claim upon the part of the Danbury bank to any preference by virtue of said assignment. From the determination of the receiver so made the Danbury bank took its appeal.

The question, therefore, for consideration is whether or not the Danbury bank is in a position to claim any preference over the general creditors, by virtue of the assignment of the said accounts so made to Mr. Whitehead. In answer to the claim of the bank it was insisted that the facts presented by the testimony made it very clear that this transaction, together with others, was undertaken solely with a view of preferring creditors, and was consequently fraudulent. This view, however, I think was not earnestly pressed. Whatever a full development of the case may present, I am very clear that so far as the case stands revealed there is nothing whatever to take it out of the cases of *Wilkinson* v. *Bauerle, 14 Stew. Eq. 635*, and *Bergen* v. *The Porpoise Fishing Co., 15 Stew. Eq. 397*, decided in the court of errors and appeals, and the more recent case of *Boehme* v. *Rall, 6 Dick. Ch. Rep. 542*, decided by Vice-Chancellor Green.

The second objection to the claim of the bank rested upon the allegation that the assignment to Mr. Whitehead was for his personal benefit, or as a personal indemnity of which he alone could avail himself. In other words, that the transaction did not contemplate a mere collateral security of which the creditor could avail himself by way of subrogation, but was subject only to the action or control of the person indemnified. There is nothing in the instrument itself to lead to any such conclusion, supposing it were possible under the law to make such an assignment. The general doctrine of subrogation is defined in *Shinn* v. *Budd, 1 McCart. 234*. In *1 Eq. Cas. Abr. 93* this doctrine is applied and is distinctly illustrated, and as it was quoted at

Whitehead v. Hamilton Rubber Co.

length and approved in the United States supreme court, I will be justified in giving it in detail, as found in *Hampton* v. *Phipps, 108 U. S. 263*: "A bond creditor shall, in this court, have the benefit of all counter-bonds or collateral security given by the principal to the surety, as if A owes B money, and he and C are bound for it, A gives C a mortgage or bond to indemnify him, B shall have the benefit of it to recover his debt." The supreme court further says, and the converse of the rule was stated by Sir William Grant, in *Wright* v. *Morley, 11 Ves. 12,* where he said: "I conceive that, as the creditor is entitled to the benefit of all the securities the principal debtor has given to his surety, the surety has full as good an equity to the benefit of all the securities the principal gives to the creditor."

These general principles, thus broadly stated, seem, by their clear and definite use of words, to conclusively comprehend the very point raised in the present controversy. And I find these general principles to be sustained by every court which has had the precise question under consideration. In *Vale* v. *Foster, 4 N. Y. 312,* it is laid down that "A creditor is entitled in equity to the benefit of all collateral securities which the debtor has given to the surety or person standing in the situation of surety." *Curtis* v. *Tyler, 9 Paige 432; Eastman* v. *Foster, 8 Metc. 19; Ten Eyck* v. *Holmes, 3 Sandf. 428.* This case also decides that the creditor in such case is entitled to the benefit of any such collateral security in preference to general creditors, in case of assignment for the benefit of creditors.

Another point taken by way of resistance to the claim of the bank, was that whilst there was a form of a transfer it was not in reality a valid one. To support this an effort was made to show that the directors, attempting to make a transfer, had not been so convened as to constitute them a lawful board for the transaction of business. The infirmity insisted upon is a want of notice. The bank, however, presents the assignment under the seal of the corporation, showing that the instrument was executed with all the formalities required in such cases. To overcome the presumption which this entitled the bank to stand upon, witnesses were presented for the purpose of showing that

6

there was no authority for the use of the seal. The minutes of the corporation were not produced, although every effort seems to have been made in behalf of the general creditors to produce them. I cannot but say that it is a source of great regret that they were not forthcoming at the call of those so much interested. A book of so much importance to all concerned could only have disappeared through inexcusable negligence. But the secretary of the company, upon being called to the stand, swore that he gave notice to all of the directors of a meeting of the board. He says that there were adjourned meetings, but not that that meeting was adjourned. The impression made upon my mind from his testimony is that he gave notice of but one meeting, and that other meetings at which any business was transacted were adjourned meetings. The last meeting of the board was the one which authorized the execution of the assignment of the accounts in question, but there is no evidence to show that there was any notice of that meeting or that it was an adjourned meeting. That all the directors are entitled to notice, either express or implied, of any meeting at which any business is transacted, in order that the business may be binding upon all the persons concerned, admits of no question. *State* v. *Furgeson, 2 Vr. 123, 124; Metropolitan Telegraph Co.* v. *Domestic Telegraph Co., 17 Stew. Eq. 568, 573; People* v. *Batchelor, 22 N. Y. 134; Commonwealth* v. *Cullen, 13 Pa. St. 133; Gordon* v. *Preston, 1 Watts 385; People's Insurance Co.* v. *Wescott, 14 Gray 440; Stow* v. *Wyse, 7 Conn. 217;* see note on *pp. 102, 103; Ang. & A. Corp. §§ 488, 492; Morawetz Corp. § 532;* and the recent case of *Doernbecher* v. *Lumber Co., 21 Oreg. 573; Simon* v. *Sevier County Association, 54 Ark. 58.*

If the meetings held are regular meetings—that is, such as are provided for by charter or the by-laws, fixing time and place—then notice thereof is implied. Of all other meetings, especially those at which any business not pertaining to the ordinary affairs of the corporation is transacted, express notice must be given of the time and place and the object or purpose of the meeting. In this case, the secretary swears that he gave notice of one meeting, and that there were several adjourned meetings held. None of

these meetings were regular meetings—they were special—and it is that very special and important business should be considered and transacted at them.

It is abundantly established that the meeting at which the assignment in question was determined upon was held without any notice whatever to any of the directors. I say, without any notice whatever, not only because of the statements made by the secretary respecting the adjourned meetings, but because I think he would have remembered sending notices to the directors of the last meeting held by them, if he had actually sent them. In this I am confirmed, considering the force of the secretary's statements, by the absence of proof by any of the other directors that notice was received by them. One of them, a brother, was in court and sworn as a witness. Four of these directors were brothers, and it is inconceivable, under the circumstances of the case, that they should have had this meeting upon due notice and lost all recollection of it. The statements of the secretary are so strong as to shift the burden. I must conclude that there was no notice of the meeting at which the board undertook to authorize this assignment.

Supposing the intimation of the secretary, that this was one of the several adjourned meetings, to be true, can the assignment which was then authorized be upheld? The assignment was an act of special importance and significance. It had, in no sense, any relation whatever to the ordinary affairs or transactions of the company. It disposed of over $20,000 of its assets to one of the members, and he the president of the board and father of four of the other directors. If there had been any notice of a meeting prior to that, there is nothing whatever to show that the notice included this assignment as one of the objects to be considered. Indeed, so far as any previous transactions of the company were under contemplation at the time of such notice may be referred to for the purpose of throwing light upon the last transactions, the inference is very strong that the only objects in view and the only acts performed at any previous meetings were the satisfaction of other creditors, and had no relation whatever to this assignment or the protection of this endorser. It seems

Whitehead v. Hamilton Rubber Co.

to me, therefore, to be fully established that if there ever was a proper notice of a meeting of the directors served upon each of them, in which the object to be considered was stated, that this assignment was not stated as one of the objects. Besides, the intimation of the secretary that this might have been an adjourned meeting is merely an intimation. He does not even go so far as to say that he thinks it was an adjourned meeting. As above stated, I conclude that it was not an adjourned meeting. This being so, and conceding that when a meeting is properly called for a particular purpose, that it may be adjourned from time to time for the further consideration of the matter so presented, this last meeting of the board of directors in this case was without authority and the assignment made cannot be upheld. If all the directors had been present at any meeting and had agreed to an adjournment for the purpose of considering the question now before us, then the result of their deliberations would have been sustained. In this case it is shown that Thomas Bell, one of the directors, was never present at any meetings, so that it cannot be said that his consent was had to the adjournment for any purpose. Nothing can be plainer to the common understanding than that if transactions of this nature be sustained by the courts, the directors of failing and insolvent corporations may perpetrate the greatest amount of wrong and injustice Thompson v. Williams, 76 Cal. 153.

The presumption in favor of the bank, arising from the execution of the assignment, under the seal of the corporation, in my judgment has been overcome.

When I consider the strange disappearance of the book of minutes and the fact that the assignment was made to Mr. Whitehead, the president of the corporation, and that four of the other directors were his sons, one of whom was the secretary and in charge of the book of minutes, whose testimony shows that there was no actual notice of the meeting in question and who does not venture to say that it was an adjourned meeting, and in this crisis another brother who was present in court, failing to show that he had notice, I cannot but conclude that the resistance to this claim of the bank should be sustained. The action of the receiver is therefore confirmed.